IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS HOUSTON
DIVISION

| | | |
|---|---|---|
| SONJI SANDERS BAILEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-17-128 |
| | § | |
| CAROLYN W. COVLIN, Acting | § | |
| Commissioner of Social Security | § | |
| Administration, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge[1] in this social security appeal is Plaintiff's Motion for

Summary Judgment (Document No. 18), Defendant's Motion for Summary Judgment

(Document No. 19), Memorandum in Support of Defendant's Motion for Summary Judgment

(Document No. 19-1), and Defendant's Response in Opposition To Plaintiff's Motion For

Summary Judgment (Document 20). After considering the motions for summary judgment, the

administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set

forth below, that Defendant's Motion for Summary Judgment (Document No. 19) is GRANTED,

Plaintiff's Motion for Summary Judgment (Document No. 18) is DENIED, and the decision of

the Commissioner is AFFIRMED.

---

[1] The parties consented to proceed before the undersigned Magistrate Judge on April 20, 2017.
(Document No. 9).

## I. Introduction

Plaintiff, Sonji Sanders Bailey ("Bailey"), brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI"). Bailey argues that the Administrative Law Judge ("ALJ"), Thomas G. Norman, committed errors of law when he found Bailey was not disabled. Bailey argues that the ALJ failed to conduct a function-by-function assessment of Plaintiff's work-related mental limitations and assigned Plaintiff an overly broad, unspecified mental Residual Functional Capacity ("RFC") for "unskilled work." Bailey further argues that the ALJ erred by rejecting the uncontroverted examining psychologist opinions. Bailey seeks an order remanding her case to the Social Security Administration so her impairments and limitations may be evaluated according to the applicable legal standards. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Bailey has the RFC to perform light work. Moreover, the Commissioner contends the ALJ properly considered the opinion evidence of the psychologists. The Commissioner asserts the decision comports with applicable law, and that the decision should, therefore, be affirmed.

## II. Administrative Proceedings

On January 13, 2017, Bailey filed for SSI claiming she has been disabled since July 15, 2009, due to interstitial lung disease, rheumatoid arthritis, post right shoulder surgery and chronic obstructive pulmonary disease. (Tr. 16)[2]. The Social Security Administration denied her application at the initial and reconsideration stages. (Tr. 135,148). Bailey then requested a

---

[2] Bailey amended her alleged disability onset date to November 1, 2011, at the August 4, 2015 hearing. (Tr. 851).

hearing before an ALJ. (Tr. 9). The Social Security Administration granted her request, and the ALJ held a hearing on August 4, 2015. (Tr. 14). On November 11, 2015, the ALJ issued his decision finding Bailey was not disabled and could perform other work in the national economy given her ability to perform light work activity. (Tr. 11-34).

Bailey sought review by the Appeals Council of the ALJ's adverse decision. (Tr. 11). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; (4) a broad policy issue may affect the public interest or (5) there is new and material evidence and the decision is contrary to the weight of all the record evidence. On November 8, 2016, the Appeals Council found no basis for review. (Tr. 1). Thus, the ALJ's decision became final.

Bailey filed a timely appeal of the ALJ's decision. The Commissioner has filed a Motion for Summary Judgment (Document No. 19). Likewise, Plaintiff has filed a Motion for Summary Judgment (Document 18). The appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1 through 877. There is no dispute as to the facts contained therein.

III. Standard for Review of Agency Decision

The court, in its review of a denial of disability benefits, is only "to [determine] (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405 (g) limits judicial review of the Commissioner's decision as follows: "[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. *Id.* While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones* at 693; *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1127 (5th Cir. 1973)).

**IV. Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act

defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. *Id.* § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

*Id.* § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if she is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, she will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience, and residual function capacity, she will be found disabled.

*Id.*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

Here, at step one, the ALJ found that Bailey was not engaged in substantial gainful activity since November 2, 2011. (Tr. 16). At step two, the ALJ determined that Bailey has the following severe impairments: interstitial lung disease, rheumatoid arthritis, post right shoulder surgery and chronic obstructive pulmonary disease. (Tr. 16). The ALJ found at step three that Bailey does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1. (Tr. 19). Prior to the consideration of step four, the ALJ determined that Bailey had the "residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with an ability to lift and carry a maximum of 10 pounds, stand and/or walk a total of 2 hours in an 8-hour workday, and sit a total of 6 hours in an 8-hour workday. Bailey is unable to climb ladders, ropes, scaffolds, or crawl. She is able to frequently climb stairs and ramps as well as frequently balance, stoop, kneel, crouch and crawl. Bailey is limited to frequent overhead reaching, pushing, and pulling with the right upper extremity. In addition, Bailey is limited to frequent handling, fingering, and feelings with the left hand. Bailey should avoid concentrated

exposure to pulmonary irritants such as fumes, odors, dust, gases, poor ventilation or chemical fumes. Bailey is limited to frequent bilateral foot controls. She must avoid unprotected heights." (Tr. 20). Using that residual functional capacity assessment, the ALJ further found at step four that Bailey is unable to perform any past relevant work, but that based on Bailey's age, education, work experience, and residual function capacity, Bailey has acquired work skills from past relevant work that are transferable to other occupation with jobs existing in significant numbers in the national economy. (Tr. 26). In this appeal, the Court must determine whether substantial evidence supports the step four finding, and whether the ALJ used the correct legal standards in arriving at that conclusion.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining, and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

**V. Discussion**

### A. Objective Medical Facts

On April 10, 2013, Bailey protectively filed applications for Titles II and XCI benefits alleging disability beginning on July 15, 2009. (Tr. 356-362). The medical record documents a history of rheumatoid arthritis associated with problems in the upper and lower extremities and breathing difficulties. On January 23, 2012, Bailey presented to the emergency room of the Harris County Hospital District ("HCHD") with complaints of shortness of breath. (Tr. 21). A respiratory examination revealed normal effort and breathing sounds. (Tr. 21). Bailey was not in respiratory distress. There were no

wheezes. (Tr. 21). Bailey had no flexion in the left wrist and limited range of motion in the right shoulder. There was bilateral ankle swelling. Radiological findings of the chest on January 23, 2012, revealed right lower lobe pneumonia and/or atelectasis associated with small right pleural effusion. (Tr. 569). Echocardiogram findings were normal. (Tr. 567). At that time, it was stated that Bailey had a history of rheumatoid arthritis but had not taken any medication since 2009. (Tr. 21, 568).

A lab report at MLK Health Clinic showed that Bailey's rheumatoid arthritis value was 26 on November 15, 2012. (Tr. 611). A patient's rheumatoid arthritis value is considered "high" when it is above 15. (Tr. 611). Upon examination by Dr. Nilda Cologne Rivera M.D., Bailey had limited range of motion in the right shoulder, right wrist and left wrist. However, there was no effusion in the PIP or DIP joints. (Tr. 610). In addition, Bailey had normal motor and sensory examinations. (Tr. 610). Deep tendon reflexes were intact. (Tr. 610). Lungs were clear to auscultation. (Tr. 610). There was no wheezing, rales, or rhonchi. (Tr. 610). Bailey had a regular heart rate and rhythm and her abdomen was soft and non-tender. (Tr. 610). Bailey's bowel sounds were normal and there were no masses or organomegaly. (Tr. 610).

When evaluated for rheumatoid arthritis at HCHD on December 18, 2012, Bailey had limited range of motion in flexion and extension of the neck. (Tr. 597). There was mild pain to palpatation in the lumbar spine. However, straight leg raising was negative bilaterally. There was stiffness and crepitus in the bilateral shoulders, pain and limited range of motion in the right shoulder, bilateral loss of motion and elbow pain, limited range of motion in the left wrist, and tenderness and swelling of the PIP and MCP joints. (Tr. 599). As to the lower extremities, there was bilateral knee pain and stiffness and

tenderness and swelling in the PIP and MTP joints. Nevertheless, Bailey had a normal gait. In addition, cranial nerves were intact. Despite Bailey's contentions of adverse side effects, she reported using NSAIDS on a regular basis without any side effects. (Tr. 597, 599). When seen on January 2, 2013, it was stated Bailey started on Methotrexate for rheumatoid arthritis with good response. (Tr. 728).

X-rays of Bailey's chest dated January 11, 2013, showed slightly increased lower lobe opacities, likely due to mild interstitial lung disease. (Tr. 604). Bailey was seen at the Family Sure Health Clinic on March 4, 2013, for a chronic cough. Respiratory examination revealed only faint scattered crackles on all lung fields. (Tr. 578). On March 20, 2013, there was only occasional wheezing. Lungs exhibited good air entry bilaterally and the respiratory examination was unremarkable. There was no evidence of any neurological deficits. Bailey had full range of motion of the back without any deformities. Examination of the feet was unremarkable bilaterally (Tr. 586, 589).

Dr. Amin Karim, M.D. completed a consultative internal medicine examination on November 6, 2013. (Exhibit 6F, 7F). Dr. Karim noted that Bailey had full range of motion in the left upper extremity in flexion, extension, abduction, and rotation. (Tr. 640). There was limited range of motion in the right wrist. There was also 1+ edema in the bilateral lower extremities. (Tr. 640). Bailey had normal range of motion in the right and left shoulder as well as normal range of motion in the elbow, carpal, hip, knee, ankle, and tarsal joints. (Tr. 641). While there was crepitus in the bilateral knees, she had normal range of motion. (Tr. 614). Bailey had full range of motion in the cervical spine in flexion, extension, lateral bending, and rotation. There was no tenderness or spasms in the cervical, thoracic or lumbar spine. Bailey had unrestricted range of motion in flexion

and rotation of the lumbar spine. Muscle tone was normal. Sensation was intact to light touch, deep sensation, position, temperature, and proprioception in the bilateral upper and lower extremities. Deep tendon reflexes were normal and Bailey's cranial nerves were intact. Bailey had a normal gait without any assistance. She was able to tip toe, walk on her heels, and tandem walk, as well as hop and squat. There was no persistent disorganization of motor function in any extremity. Bailey was able to speak and hear normally. She was able to button clothes, tie shoes, and pick up a pen with her left upper extremity. (Tr. 641).

On November 20, 2013, the Bailey presented with complaints of coughing, wheezing, chest tightness, shortness of breath, dyspnea on exertion, and mucus production. (Tr. 707). However, Dr. Thomas Mussiangelo found that Bailey had been using an inhaler with good response and had improved breathing and lung function. (Tr. 713). On November 21, 2013, Bailey reported only moderate pain due to arthritis. She said she was taking medication regularly without any side effects. Upon examination, there was mild pain to palpation in the lumbar spine. There was pain and limited range of motion in the upper and lower extremities. Lungs were clear to auscultation. Cardiovascular examination remained normal. Radiological findings of the right knee exhibited advanced tri-compartmental degenerative changes, symmetric joint space loss and moderate effusion. (Tr. 744-45).

When seen on March 10, 2015, Bailey reported coughing up green sputum. However, Bailey reported she had run out of several medications for a significant period of time. In any event, a respiratory examination showed only mild rales without wheezing. (Tr. 780).

On April 30, 2015, Dr. John Anigogu M.D., completed a consultative internal medicine examination. At that time, Bailey reported rheumatoid arthritis and joint deformities. She rated her pain level as 6 to 8 on a scale of 1 to 10. (Tr. 763). She reported the pain was more severe in the right shoulder, wrists, elbows, right knee, and ankles. (Tr. 763). Upon examination at Bayou Rehab & Medical Clinic, her lungs were found clear to auscultation and percussion bilaterally without wheezing, rales, or rhonchi. (Tr. 764). Chest wall was symmetrical and there was no synovitis in the right hand, wrists, or left ankle. There was tenderness in all joints with deformity primarily at the wrists, elbows, and right knee. In addition, there was limited range of motion in the right shoulder. (Tr. 764). Her cranial nerves were grossly intact and her sensation was intact to pinprick and light touch. (Tr. 764). Bailey was independent with dressing, bed mobility, and transfer. She was observed to ambulate with a cane, with a left antalgic gait and a slight hip hiking, although her sitting and standing balance was good. (Tr. 764).

Here, substantial evidence supports the ALJ's finding that Bailey's interstitial lung disease, rheumatoid arthritis, post right shoulder surgery and chronic obstructive pulmonary disease were severe impairments at step two, and that such impairments at step three, individually or in combination, did not meet or equal a listed impairment. Substantial evidence supports this determination.

RFC is what an individual can still do despite her limitations. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *2 (SSA July 2, 1996). The responsibility for determining a claimant's RFC is with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ is not

required to incorporate limitations in the RFC that he did not find to be supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

Bailey argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to address her right dominant hand limitation. Contrary to Bailey's arguments, the ALJ's discussion of the record shows Bailey has admitted to essentially normal activities of daily living, such as doing her laundry and cleaning. (Tr. 871-72). She also was able to prepare simple meals, grocery shop, use the telephone and computer to shop, take her daughter to school, pay bills, count change, and handle a savings account and use a checkbook/money orders. The ALJ also noted inconsistencies in the record relating to Bailey's daily activities, and relief from medications for rheumatoid arthritis. Also, the ALJ relied on the medical source statement of ability to do physical work related activities of Dr. John Anigbogu, a consultative examiner. Dr. Anigbogu opined that in the patient's past, Bailey "was able to frequently reach and push/pull and continuously handle, finger, and feel with the right hand." (Tr. 821). Dr. Anigbogu's opinion was consistent with the opinions of the June and December 2013 State disability determination unit physicians, the November 2013 consulting examiner's opinions, and the medical source statements of Dr. Nilda Cologne Rivera, the patient's current treating rheumatologist, and nurse practioner. The ALJ carefully considered all of the medical evidence in formulating an RFC that addressed Bailey's physical impairments. The ALJ, based on the totality of the evidence, concluded that Bailey could perform light work restricted to the extent that she never be required to climb ropes, ladders, or scaffolds, nor perform overhead reaching with the dominant upper extremity. She could occasionally stoop, crouch, kneel, crawl, and negotiate stairs and ramps. (Tr.

874). The limitations take into account her rheumatoid arthritis, post right shoulder surgery, and her pulmonary and lung disease that the ALJ found supported by the record as a whole. The ALJ gave specific reasons in support of this determination. This factor weighs in favor of the ALJ.

## B. Diagnosis and Expert Opinions

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. The law is clear that "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Newton*, 209 F.3d at 455. The ALJ may give little or no weight to a treating source's opinion, however, if good cause is shown. *Id.* at 455-56. The Fifth Circuit in *Newton* described good cause where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Id.* at 456. "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453. The six factors that must be considered by the ALJ before giving less than controlling weight to the opinion of a treating source are: (1) the length of treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) the support of the source's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the source. 20 C.F.R. § 404.1527(d)(2); *Newton*, 209 F.3d at 456. An ALJ does not have to consider

the six factors "where there is competing first hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," and where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *Alejandro v. Barnhart*, 291 F.Supp.2d 497, 507-11 (S.D. Tex. 2003). Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Id.* at 455; *see also Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so.") However, perfection in administrative proceedings is not required. See *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

Here, the thoroughness of the ALJ's decision shows that he carefully considered the medical records and testimony, and that his determination reflects those findings accurately. The ALJ summarized the evidence and set forth specific reasons concerning the weight given to the opinions of the medical sources. The Court concludes that the diagnosis and expert opinion factor also supports the ALJ's decision.

### C. Subjective Evidence of Pain

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of

14

pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. 42 U.S.C. § 423. The regulations provide a two-step process to evaluate a claimant's alleged symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929.

First, the ALJ must consider whether there is an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms, such as pain. 20 C.F.R. §§ 404.1529, 416.929. Second, the ALJ evaluates the intensity, persistence of the symptoms, and limiting effects of the symptoms on the claimant's ability to do basic work related activities. *Id.* This evaluation entails the ALJ considering the record, including medical and laboratory findings, the opinions of treating and non-treating medical sources, other factors relevant to the claimant's symptoms such as daily activities, location, duration, frequency and intensity of pain and other symptoms, and measures taken (such as medication, treatment or home remedies) to alleviate those symptoms. The ALJ also considers factors that precipitate and aggravate symptoms, the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms, treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms, any measures other than treatment the claimant uses or has used to relieve pain or other symptoms, and any other factors concerning the claimant's functional capacity, limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c). A claimant's testimony must be consistent with the objective medical evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and

wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Farrell v.*

*Bown*, 837 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment

which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v.*

*Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential.

The evaluation of evidence concerning subjective symptoms is a task particularly within the

province of the ALJ, who has had the opportunity to observe the claimant. *Hames*, 707 F.2d at

166. Thus, the ALJ's evaluation of the claimant's subjective complaints is entitled to deference if

supported by substantial evidence. *See Newton*, 209 F.3d at 459.

The undersigned finds that there is nothing in the record to suggest that the ALJ made

improper credibility findings, or that he weighed the testimony improperly. Accordingly, this

factor also supports the ALJ's decision.

**D. Education, Work History, and Age**

The final element to be weighed is the claimant's educational background, work history

and present age. A claimant will be determined to be under disability only if the claimant's

physical or mental impairments are of such severity that she is not only unable to do her previous

work, but cannot, considering her age, education and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §(d)(2)(A).

The record shows that the ALJ questioned Laurie McQuade, a vocational expert ("VE"),

on August 4, 2015. "A vocational expert is called to testify because of his familiarity with job

requirements and working conditions. The value of a vocational expert is that he is familiar with

the specific requirements of a particular occupation, including working conditions and the

attributes and skills needed." *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995)(quoting

*Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational

expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments, which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling*, 36 F.3d at 436.

The ALJ posed the following comprehensive hypothetical questions to the VE:

Q. So based on her age, education, and past work experience, assume I find—I take her—she can only lift up to 10 pounds, sedentary level; she can only stand and walk for approximately six – or – excuse me, two hours out of the eight-hour day; no climbing ladders, ropes, scaffolds, crawling; frequent stairs, ramps, balancing, stooping, kneeling, crouching, and crawling; right arm limited to frequent overheard reaching and pushing and pulling with right arm; left arm limited to frequent handling, fingering, and feeling; avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, poor ventilation or chemical fumes; frequent bilateral foot controls. She must avoid, though, unprotected heights. Could she do her past relevant work?

A. No.

Q. Either job?

A. That's correct, sir, yes.

Q. Does she have skills that transfer?

A. Yes, she does.

Q. And what type of skills?

A. Communicating processing, organizing, scheduling, planning. That's just a representative sample, sir.

Q. And could you give me three jobs that they would transfer to – I mean two – under that hypothetical?

A. Yes. Example would include something like a telephone solicitor, 299.357-014, sedentary, semi-skilled, SVP level of 3, existing by 250,000 in the national economy and

approximately 3,000 in the local regional economy; personnel scheduler, again performed at the sedentary level of physical exertion, SVP level 4, DOT code 215.367-014, existing by 200,000 in the national economy and 3,000 in the local regional economy; or something like a taxicab starter –

Q. A what?

A. Taxicab starter, DOT code 913.367-010, existing by approximately 75,000 in the national economy and approximately 1,000 in the local regional economy, with an SVP level of 3, sir.

Q. Now, do the jobs you've given me conflict with the information in the Dictionary of Occupational Titles or the Selected Characteristics of Occupations Defined in the DOT?

A. No. (Tr. 874-875).

A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Upon this record, there is an accurate and logical bridge from the evidence to the ALJ's conclusion that Bailey was not disabled. Based on the testimony of the VE and the medical records, substantial evidence supports the ALJ's finding that Bailey could perform other work existing in significant numbers in the national economy (Tr. 26). The Court concludes that the ALJ's reliance on the vocational testimony was proper, and that the VE's testimony, along with the medical evidence, constitutes substantial evidence to support the ALJ's conclusion that Bailey was not disabled within the meaning of the Act and, therefore, is not entitled to benefits. Further, it is clear from the record that the proper legal standards were used to evaluate the evidence presented. Accordingly, this factor also weighs in favor of the ALJ's decision.

## VI. Conclusion

Considering the record as a whole, the Court is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration which direct a finding that Bailey was not disabled within the meaning of the Act, that substantial evidence supports the ALJ's decision, and that the Commissioner's decision should be affirmed. As such, it is ORDERED Plaintiff's Motion for Summary Judgment (Document No. 18), is DENIED, Defendant's Motion for Summary Judgment (Document No. 19) is GRANTED, and the decision of the Commissioner of the Social Security is AFFIRMED.

Signed at Houston, Texas, this _____ day of _____, 2017

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE